## WHEAT v. CITY OF ST. LOUIS, Appellant.

### Division One, February 10, 1904.

1. **Negligence:** MANHOLE IN STREET: WHEN CITY LIABLE. St. Louis has a clear legal right to build a sewer in a street and to leave a manhole connected therewith projecting three feet above the natural level of the unimproved street, so that it will conform to the established grade of the street when improved. But in so doing it takes the risk that some one unacquainted with its existence and condition and who is travelling along the street in the nighttime when he can not see the obstruction will run against it and be injured. Such a person would be entitled to recover for his injuries because as to him the city is negligent, and he is not.

2. ——: ——: ——: ACQUAINTED WITH SURROUNDINGS. But the city is not liable to a driver of a milk wagon who had for a year daily passed the manhole, knew all about it, could see it, and by the exercise of ordinary care could have avoided it and the consequent injury to himself.

3. ——: ——: CARE TO BE EXERCISED BY TRAVELLER. A person who knows of defects or obstructions in a public street must use reasonable care while travelling thereon, to avoid them, and that care must increase in proportion to his knowledge of the risk.

4. ——: ——: ——: ATTENDING TO ONE'S OWN BUSINESS. A driver of a wagon or a traveller on a street has no right to have his mind so engaged in his own business as to become heedless or indifferent to obstructions or defects therein of which he well knows. He has no right to be so engaged in his own affairs as to be negligent of his own safety.

5. ——: CONTRIBUTORY AND CONCURRENT: RECOVERY. If both the city in permitting an obstruction to remain in a street, and a traveller therein, well acquainted with the conditions, are negligent, and their negligence contributes to the injuries of the traveller, he can not recover for them. And if the traveller's negligence necessarily contributes to the happening of the injury, there can be no recovery.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

REVERSED.

*Chas. W. Bates* and *Benj. H. Charles* for appellant.

(1) The city is not an insurer of the safety of travellers on the streets. It is not liable unless the street was in a condition unsafe to be used by persons exercising ordinary care in traveling thereon. Buckley v. Kansas City, 156 Mo. 16; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 115 Mo. 317. (2) The city has the lawful right to build in the street the sewer manhole, such as was shown in the evidence, in the manner so shown, and had the right to build the same at the height it was built prior to the complete grading and paving of the street; and the so-called obstruction was a lawful obstruction, not dangerous to those using the street in the exercise of ordinary care for their own safety. (3) Although the city was negligent, still, as the negligence did not contribute to the injury, no recovery can be had on account of such negligence. Hutchinson v. Railroad, 161 Mo. 246. (4) Where the plaintiff's own testimony shows he is guilty of contributory negligence he can not recover. Failure to look where he was going when he knew the street was obstructed by the manhole and was unsafe, if it was unsafe, is negligence as a matter of law on the part of the plaintiff, and the court should have so declared. Cohn v. Kansas City, 108 Mo. 387; Hudson v. Railroad, 101 Mo. 30; Roberts v. Tel. Co., 166 Mo. 370; Sindlinger v. Kansas City, 126 Mo. 315; Hogan v. Railroad, 150 Mo. 55; 7 Am. and Eng. Ency. Law (2 Ed.), p. 412; 4 Am. and Eng. Ency. Law (1 Ed.), p. 15. The following cases from other States illustrate the rule above stated: Benton v. Philadelphia, 198 Pa. St. 396; Onri v. Magill, 101 Pa. St. 616; Schaefler v. Sandusky, 33 Ohio St. 246; City of Quincy v. Barker, 81 Ill. 300; Hutchins v. Priestly, etc., Co., 61 Mich. 252; Cowie v. Seattle

(Wash.), 4 Mun. Corp. Cas. 417; Cloney v. Kalamazoo (Mich.), 4 Mun. Corp. Cas. 640; Town of Salem v. Walker (Ind. App.), 1 Am. Neg. Rep. 430; Bailey v. Brown Township (Pa.), 6 Am. Neg. Rep. 193; Grabbel v. Sioux City, 38 Iowa 390; Dale v. Webster County, 76 Iowa 370; Tuffree v. State Center, 57 Iowa 538; Yahn v. Ottumwa, 60 Iowa 429; Nebraska Tel. Co. v. Iones (Neb.), 81 N. W. 435; Tasker v. Farmingdale, 91 Me. 521; Gilmer v. Deerfield, 15 Gray 577; Corbett v. Leavenworth, 27 Kan. 673; Moone v. Richmond, 85 Va. 538; Walker v. Reidsville, 96 N. C. 385.

*William H. O'Brien, B. R. Brewer* and *Robt. A. Holland, Jr.*, for respondent.

(1)   St. Louis had a right to build a sewer under the street in question and had a right to annex manholes to said sewer, but this right did not extend to the city the privilege of constructing either the sewer or the manhole in a dangerous manner. If, in carrying out this right to erect a sewer and manhole, the city acted negligently and without regard to the safety of persons using the street, it would be liable to one injured in consequence thereof. In this case there is absolutely no evidence justifying, or tending to justify, the city in the erection or maintenance of this manhole. The evidence shows that it was allowed to remain standing three feet above the surface of the street for an entire year. The fact that the city contemplated at some distant time changing the grade of the street did not authorize it to allow such an obstruction to stand in the interim. On the contrary, if the city knows that it can not change the grade of the street for a long time, it is its duty to conform the height of the manhole to the existing grade. Gerdes v. Iron & Foundry Co., 124 Mo. 354.   (2) The evidence does not show that the plaintiff, as a matter of law, was guilty of negligence. Appellant bases its contention upon the fact that plaintiff admitted that he

knew, and had known for some time, of the existence of this obstruction on Vernon avenue. But it has been held over and over again by this court that mere knowledge on the part of plaintiff of a defect or obstruction in the street does not preclude him from recovering from an injury resulting from such obstruction. The law is not so tyrannous as to require a pedestrian or driver on a public street to eternally burden his mind with the consciousness of a defect and to devote his attention solely and exclusively to the existence of said defect and the exact place where it is, to the exclusion of all other thoughts and feelings. A pedestrian or a driver, although he knows that there is an obstruction in a certain part of a street, has a right, as he proceeds, to entertain feelings and thoughts in connection with other matters. Otherwise he would never accomplish anything. And the mere fact that at a given instant of time a pedestrian or driver forgets that a given obstruction in a street, at a given place, does not make him guilty of negligence as a matter of law. It is for the jury, under all the circumstances, to state whether the momentary forgetfulness of the plaintiff under such circumstances constitutes negligence. This has been directly held in the case of Graney v. St. Louis, 141 Mo. 180; Loewer v. Sedalia, 77 Mo. 431; Smith v. St. Joseph, 45 Mo. 449; Beauvis v. City, 69 S. W. 1043; Haller v. City, 78 S. W. 613.

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries sustained by the plaintiff, on November 19, 1898, by his milk wagon running over and being upset by a manhole to a public sewer in Vernon avenue in the city of St. Louis, nearly opposite 4635 Vernon avenue. The plaintiff recovered a judgment for $1,000, and the defendant appealed.

The negligence charged in the petition is that the city constructed and maintained a manhole to a sewer in the street, which projected three feet above the level

of the street, and which was about six feet in circumference, and had earth piled around the manhole, which was nine feet and six inches in diameter at the base and sloped towards the top, which it is alleged was a dangerous obstruction.     The answer is a general denial and a plea of contributory negligence.

The facts are these:   Vernon avenue is only one block long and extends from West End avenue to Walton avenue and is sixty feet wide.   About a year before the accident the city had constructed a sewer near the center of the street, preparatory  to constructing the street.   The top of the manhole was made to conform to the grade of the street when it is constructed, but is about three feet above the level of the street in its present condition.   This left a driveway on the north of the manhole eight feet four inches wide, and one on the south of the manhole twelve feet, ten  inches wide. When the city finished building the sewer, the appropriation for the improvement of the street ran out, and the work had to be stopped.   So this condition had existed for about a year before the accident occurred.  The plaintiff was employed by the Union Dairy Company as a driver of one of its milk wagons, and had been delivering milk in that neighborhood for over five years, and on Vernon avenue for over a year.   He had to deliver milk to a regular customer at No. 4635 Vernon avenue, and an irregular customer on the opposite side of the street.   That was the end of his route, and when he delivered milk to these customers he turned and came east again.   The manhole stood in the center of the street and nearly opposite to the steps that lead up into the premises No. 4635 Vernon avenue.   The plaintiff knew all about the manhole and had seen it and driven around it every day for a year, sometimes west of it and sometimes turning east of it.   On the morning of the accident he drove to 4635 Vernon avenue and got out and delivered milk.   When he got out of the wagon he hung the reins up on a hook at the top of the wagon, which held

the horse so he could not move without pulling the wagon by his mouth.   He says his horse knew the way as well as he did, and did not need to be guided and he frequently let him go along without directing him and he knew where to stop.   After delivering the milk he got into the wagon and took the reins off the hook and the horse started.   He says he does not remember whether he turned the horse or whether he let the horse turn of his own accord.   At any rate the horse turned the wagon to go east again, and in so doing ran up on the pile of earth surrounding the manhole, upset the wagon and the plaintiff was hurt.   He says it was about six o'clock in the morning and that while it was after daybreak the morning was dark and foggy, but not so much so as to prevent his seeing the manhole, if he had looked. Other witnesses said, while it was foggy, one could see across the street, and anyone could see the manhole.  The plaintiff says that he thought he had passed the manhole and consequently was not looking for it.

At the close of the plaintiff's case and again at the close of the whole case the defendant demurred to the evidence, the court overruled the demurrers, and the defendant excepted, and relies solely upon this ruling upon this appeal.

## I.

The contention of the defendant is that the city was guilty of no negligence in constructing and maintaining the manhole in the condition shown, but that even if it was its negligence was not the proximate cause of the injury, but that the plaintiff well knew the fact and the condition and was guilty of such contributory negligence as bars a recovery.   On the other hand, the plaintiff contends that while he knew of the existence and condition of the manhole and might have seen it and avoided it, still he was not obliged to keep it in mind but had a

right to think of something else, and that his mind was engrossed with his work and he thought he had passed the manhole, and therefore he was guilty of no contributory negligence.

The city had a clear legal right to build the sewer, and to leave it projecting three feet above the natural level of the unimproved street, and so that it would conform to the established grade of the street when it was improved. But it took the risk in so doing of some one who was unacquainted with its existence and condition and who was travelling along the street in the nighttime when he could not see the obstruction, running against it and being injured. Such a person would be entitled to recover because as to him the city was negligent and he was not. But the plaintiff does not fall within this rule, for he knew all about the manhole, and it was light enough at the time of the accident for him to see it, and by the exercise of ordinary care he could easily have avoided it, just as he had done every day, about the same hour of the day, for a year. It is not clear whether the plaintiff let the horse turn without guidance or whether he directed him, but in either event he is responsible for the wagon striking the mound around the manhole and being upset, for by the exercise of any care whatever he could have avoided it.

It is true, as claimed by the plaintiff, that no one is precluded from traveling on a highway in which he knows there are obstructions or defects and on which he has business, and his knowledge of the condition of the street will not conclusively bar his recovery. [Barr v. Kansas City, 105 Mo. 550; Market v. St. Louis, 56 Mo. 189; Buesching v. Gas Co., 73 Mo. 219; Loewer v. Sedalia, 77 Mo. 431; Staples v. Canton, 69 Mo. 592.]

But whilst this is true, the person who knew of such defects and was injured, must use reasonable care while travelling along such defective street, and that care must increase in proportion to his knowledge of the risk. [Foster v. Swope, 41 Mo. App. 137.] And such knowl-

edge of the danger is admissible to prove contributory negligence.   [Flynn v. Neosho, 114 Mo. 567.]

As was well said by Lord ELLENBOROUGH, C. J.: "A party can not cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right.  .  .  .  One person being in fault will not dispense with another's using ordinary care for himself.   Two things must concur to support this action —an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."   [Butterfield v. Forrester, 11 East 60.]

And this court approved the rule so laid down, in an opinion per GANTT, P. J., in Sindlinger v. Kansas City, 126 Mo. 315, who, speaking of the rule, said: "This is the general rule of law as to contributory negligence, which applies, as of course, to actions brought by travellers for injuries received by reason of defects or obstructions upon the highway.   [Beach on Contributory Negligence (2 Ed.), sec. 246.]   Ordinarily the question whether the plaintiff, under all the circumstances, has been guilty of contributory negligence, is one for the jury.   [Loewer v. Sedalia, 77 Mo. 431.]   But if the evidence elicited to establish the contributory negligence of plaintiff admits of no other fair inference than that he was negligent and that his own negligence contributed directly to, or was, in other words, the proximate cause of, the injury, then it becomes one for the court, and a demurrer to the evidence will be sustained."

The same rule was recognized in Wiggin v. St. Louis, 135 Mo. 558, and in Cohn v. Kansas City, 108 Mo. 387.

The plaintiff in this case knew of the obstruction in the street, and knew that by the exercise of ordinary care he could avoid striking it while travelling along the street.   His act in striking it was, therefore, *per se* contributory negligence.   [City of Erie v. Magill, 101 Pa.

St. 616; Schaefler v. Sandusky, 33 Ohio St. 246; City of Quincy v. Barker, 81 Ill. 300; Church v. Howard City, 111 Mich. 298; Town of Salem v. Walker, 1 Am. Neg. Rep. 430; Tuffree v. State Center, 57 Iowa 538; Yahn v. Ottumwa, 60 Iowa 433; Benton v. Philadelphia, 198 Pa. St. 396; Nebraska Tel. Co. v. Jones, 81 N. W. 435; Moore v. Richmond, 85 Va. 545; Walker v. Reidsville, 96 N. C. l. c. 385; 7 Am. and Eng. Ency. Law (2 Ed.), p. 412.]

The contention of the plaintiff that he had a right to have his mind so engrossed in his business that he did not think of the obstruction or thought he had passed it, is wholly untenable. Persons travelling on a highway are charged with a duty to exercise reasonable care to observe and avoid obstructions and defects. They have no right to be so engrossed in their own affairs as to be negligent of their own safety. As was well said by CAMPBELL, C. J., in Hutchins v. Priestly, etc., Co., 61 Mich. 252, in speaking of a man who walked into an elevator shaft, instead of a door close to it: "The only explanation of his conduct is, what there is no difficulty in gathering from his own testimony, although he does not seem to be aware of it, that he is one of those persons who pay little heed to their surroundings, and go hither and thither on their errands absent-minded, or thinking only of some particular object and shutting their eyes to everything else. Such inattention is sometimes dangerous to the person himself, and quite as often to his neighbors. It is want of that ordinary care which the safety of society requires all sane persons of mature age to exercise, and for which they are civilly responsible. Business could not be carried on without this requirement." The rule has recently undergone review in other jurisdictions. In Cowie v. Seattle, 4 Mun. Corp. Cas. 417, the Supreme Court of Washington held that "a person who is perfectly familiar with the condition of a sidewalk in which a defect exists has no right,

while using it, to act on the ordinary presumption that it is in good condition."

In Cloney v. Kalamazoo, 4 Mun. Corp. Cas. 640, the syllabus is as follows:

"In an action for injuries to a pedestrian caused by his stepping into an unguarded excavation made in a crosswalk of a city street in tearing up the pavement of the street for the purpose of repaving, it appeared that plaintiff knew that the work was being done at or near the crossing where the accident occurred, and, having seen the work going forward, must have been aware that such excavations were being made, and, though it was at night, he could have readily seen the excavation before stepping into it, as there was an arc light hanging over the street near such point, besides other lights in the vicinity. Plaintiff testified that he was observing a team at the time, and that he was not aware that the work was being done exactly at the crossing. *Held,* that a verdict should have been directed for the defendant city."

To the same effect is Dale v. Webster Co., 76 Iowa 370 (where the plaintiff knew of the defect and walked along without looking where he was going); Tuffree v. State Center, 57 Iowa 538 (where the plaintiff drove in one direction and was looking and talking to persons in another direction); Tasker v. Farmingdale, 91 Me. 521 (where the plaintiff was absorbed looking at an electric car and gave no thought to the dangers on the road and drove a wheel of her conveyance over the end of a culvert); Gilman v. Deerfield, 15 Gray 577 (where the plaintiff knew of the defect in the highway and while thinking of something else and temporarily unmindful of the defect drove into it); Nebraska Tel. Co. v. Jones, 81 N. W. 435 (where the plaintiff knew of the defect and while thinking of something else drove over a stump in the road).

In short the rule is supported not only by the almost universal trend of authority, both English and Ameri-

can, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is familiar with or which by the exercise of ordinary care he could discover and easily avoid. And while the city may be negligent in the discharge of its duty, the citizen may also be negligent in the discharge of his duty. And if both are negligent and their negligence contributes to the injury, there can be no recovery. And if the plaintiff's negligence necessarily contributes to the happening of the injury, there can be no recovery. Such is clearly this case. The negligence of the city had continued for a year. The plaintiff knew it and by the exercise of ordinary care he had avoided injury from it every day, and about the same hour every day, for a year. He could have avoided it on the day of the accident if he had exercised ordinary care. He was negligent in letting the horse turn unguided or in so guiding him as to strike the obstruction he knew was there. Without his contributory negligence no injury would have resulted to him from the negligence of the city. He made out no case for the jury. The demurrers to the evidence should have been sustained. The judgment is reversed. All concur.